```
 1  Kenneth J. Guido, California Bar No. 40020
    Plaintiff's Trial Counsel
 2  Securities and Exchange Commission
    450 Fifth Street, NW
 3  Washington, DC 20549-0911
    Telephone: (202) 942-7933
 4  Facsimile: (202) 942-9581
 5
 6
 7
```

FILED CLERK, U.S. DISTRICT COURT OCT - 6 2003 CENTRAL DISTRICT OF CALIFORNIA BY DEPUTY

RECEIVED BUT NOT FILED AUG 28 2003 CLERK, U.S. DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DIVISION BY DEPUTY

LODGED CLERK, U.S. DISTRICT COURT AUG 28 2003 CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DIVISION BY DEPUTY

Priority ___
Send  X
Clsd ___
Enter X
JS-5/JS-6 ___
JS-2/JS-3 ___

ENTERED OCT 10 2003 CLERK, U.S. DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA SANTA ANA OFFICE BY

ENTER ON ICMS OCT 10 2003

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> NORTH AMERICAN MEDICAL PRODUCTS, INC., ARTHUR GIANAKOS, PAUL WAYNE MASON (a/k/a LOUIS RONNIE SARPY), LAURENCE MARK ANDERSON (a/k/a RON LAURENCE), KRISTIN LUCK EMERY, and NIKO G. EFSTATHIOU, <br><br> Defendants. | NO. SACV03-250 AHS (ANx) <br><br> [PROPOSED] FINDINGS, ORDER AND FINAL JUDGMENT OF DEFAULT AGAINST DEFENDANT LAURENCE MARK ANDERSON (a/k/a RON LAURENCE) <br><br> Courtroom of the Honorable Alicemarie H. Stotler |

It appearing to this Court that Plaintiff Securities and Exchange Commission ("Commission"), having duly commenced this action by filing its Complaint for Injunctive and Other Relief for Violations of the Federal Securities Laws ("Complaint"), against Defendant Laurence Mark Anderson (a/k/a Ron Anderson) ("Defendant Anderson"), and for such other and further relief as this Court may deem just and proper.

It further appearing to the Court that Defendant Anderson has been properly served with the Summons, that Defendant Anderson has not filed his answer to the Complaint or otherwise pled; the Commission having moved this Court for an Order granting an application for Default Judgment; the Court having jurisdiction over the

parties and the subject matter of this action, the Court being fully advised in the premises, and there being no just reason for delay:

THE COURT HEREBY FINDS AS FOLLOWS:

### A. FACTS ESTABLISHING JURISDICTION

1. The Commission commenced this action on March 11, 2003 by filing the Complaint against Defendant Anderson, as well as others. Declaration of Kenneth J. Guido ¶ 2.

2. On July 9, 2003, a copy of the Summons and Complaint was served on Defendant Anderson. Id. at ¶ 3.

3. Defendant Anderson has not filed an answer to the Complaint or otherwise pled, and the time has expired for him to have done so to avoid entry of a default order. Id. at ¶ 4.

4. Venue is proper in this District pursuant to Section 22(a) of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. § 77v(a)], and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. § 78aa], because certain of the transactions, acts, practices and courses of conduct constituting violations of the laws alleged occurred within this District and because certain of the Defendants reside in and transact business in this District. Complaint ¶ 5.

5. In connection with the transactions, acts, practices, and course of business described in this Judgment, each of the Defendants, directly and indirectly, has made use of the means or instrumentalities of interstate commerce, of the mails, and/or of the means and instruments of transportation or communication in interstate commerce. Complaint ¶ 6.

### B. FACTS ESTABLISHING LIABILITY

1. <u>North American Medical Products, Inc.</u> ("NAMP" or the "Company") is a Delaware corporation with its offices in Albany, New York. Formed in 1984, the Company is engaged in the development, production, and marketing of medical products, primarily needle-stick protection devices for use in the healthcare

industry. The Company employs a small number of people, including its president, Arthur Gianakos, and members of his family. There is no established secondary market for NAMP's stock and no NAMP securities have ever been registered with the Commission. Complaint ¶ 7. NAMP consented to a judgment entered by the Court on March 18, 2003.

2. <u>Arthur Gianakos</u> ("Gianakos"), 54, is NAMP's chairman and president. Together with his wife, he owns approximately 56% of NAMP's common stock. Complaint ¶ 8. Gianakos consented to a judgment entered by the Court on March 18, 2003.

3. <u>Niko G. Efstathiou</u> ("Efstathiou"), 55, of Monarch Beach, California, was NAMP's Director of Marketing and a member of NAMP's board of directors. He arranged for unregistered brokers led by Mason to market NAMP's stock issuance beginning in 1997 in exchange for a 50% commission he received from NAMP. He also received 1,050,000 shares of NAMP stock in exchange for his sales activities. Efstathiou was not registered as a broker with the Commission. Complaint ¶ 9. Efstathiou consented to a judgment entered by the Court on March 18, 2003.

4. <u>Paul Wayne Mason (a/k/a Louis Ronnie Sarpy)</u> ("Mason"), 48, currently incarcerated in the North Kern State Prison, is a convicted felon, who offered and sold NAMP stock to the public, first under a relationship with Efstathiou, and, in or about 2001, directly with NAMP as the proprietor of his own boiler room in Newport Beach, California. Mason was not registered as a broker with the Commission. Complaint ¶ 10. The Court entered a final judgment of default against Mason on August 5, 2003.

5. <u>Laurence Mark Anderson (a/k/a Ron Laurence)</u> ("Anderson"), 45, a Los Angeles area resident, was Mason's primary associate in selling NAMP stock from a boiler room in Newport Beach. Anderson was not registered as a broker with the Commission. Complaint ¶ 11.

6. <u>Kristen Luck Emery</u> ("Emery"), 40, worked together with Mason and Anderson in selling NAMP stock. Emery was not registered as a broker with the Commission. Complaint ¶ 12. She is currently residing in a residential facility for substance abusers, having been released from the California Institution for Women in August 2003. The Court entered a final judgment of default against Emery on August 5, 2003.

7. NAMP is a company located in Albany, New York. It develops and produces proprietary medical products, including needle stick protection devices (*i.e.*, syringes with needles that retract after injection). NAMP's modest revenues have been insufficient to provide adequate working capital for its operations. Consequently, from 1997 through 2001, the Company, at the direction of Gianakos, obtained operating capital through sales to the public of its common and preferred stock. These stock sales, conducted through what the Company purported to be private offerings, raised total proceeds of approximately $3.75 million. Complaint ¶ 13.

8. In mid-1997, NAMP president Gianakos was introduced to Efstathiou, an individual with experience in the sale of securities. Efstathiou agreed to raise capital for NAMP by selling NAMP stock through his business, Atrie, which is not a registered broker/dealer. The parties entered into a written agreement under which Atrie would receive 50% of all funds raised from the offering, primarily as consideration for soliciting subscriptions from investors. Gianakos and Efstathiou participated in the drafting of the purported private placement memorandum ("PPM") for the Company's stock offering, intended to raise $5 million from the sale of 1 million shares of its preferred stock. Complaint ¶ 14.

9. The "Use of Proceeds" section of the purported PPM stated: "[t]he net proceeds from the placement of the Preferred Stock are estimated to be approximately $4,000,000 after the payment of offering costs, assuming the placement of $5,000,000 of Preferred Stock." Thus, the offering costs should not

have exceeded 20% of the gross offering proceeds. The purported PPM further stated that, if stock was sold through a broker-dealer, it would be a registered broker-dealer, and that no commissions would be paid to any persons or firms not registered as broker-dealers. The purported PPM also stated that no commissions would be paid to any officer, director, or employee of the company. All of these representations were false. Complaint ¶ 15.

10. In fact, Efstathiou -- who had become a member of NAMP's board of directors and had been given the title Director of Marketing -- was paid, through Atrie and other nominees, 50% of the proceeds of all subscriptions to the offering. As an additional (undisclosed) inducement to create a market for NAMP securities, Gianakos gave Efstathiou 5% of NAMP's outstanding common stock (1,050,000 shares). Efstathiou, in turn, passed on 30% of his commissions (15% of gross proceeds) to Mason, who was primarily responsible for telemarketing the NAMP preferred stock through a network of unlicensed agents working for him in Orange County. Mason used the alias "John Shapiro" when he solicited investors to purchase the preferred shares. Moreover, all of the individuals who received commission payments for selling NAMP preferred stock were unregistered brokers. Complaint ¶ 16.

11. NAMP included no historical financial statements in its PPM, although required to do so under applicable regulations. Thus investors were not informed that the Company had only modest sales and had lost money during each year of its operation. Complaint ¶ 17.

12. Efstathiou ended his involvement with the preferred stock offering in July 2000, after selling approximately $2.75 million in NAMP stock, and receiving approximately $1,377,811 in commissions. By this time NAMP and Gianakos had been the subject of two state administrative proceedings for selling unregistered NAMP stock through unregistered brokers, with Efstathiou named in one of those actions. Complaint ¶ 18.

13. With Efstathiou gone, Mason convinced Gianakos to allow him to take over the sales efforts directly. They decided to launch a second offering: this time of 2 million shares of NAMP common stock at $2.50 per share, for a total of $5 million in gross proceeds. NAMP initially agreed to pay Mason a 35% commission on his stock sales, but later increased his commission to 50%. Although Mason had no office at NAMP and performed no services (other than selling its stock), Gianakos, at Mason's request, had business cards printed for Mason as NAMP's "Director of Financial Services" and paid him a salary of $100 per week. This facilitated Mason's sales efforts by allowing him to present himself as an officer of the company, rather than a broker. Complaint ¶ 19.

14. Gianakos created the purported PPM for this offering by cutting and pasting sections of the memo from the previous offering. The new PPM, like the original PPM for the preferred stock offering, failed to disclose that 50% of the offering proceeds would go to pay sales commissions, and affirmatively misrepresented that the offering costs would not exceed 20% of gross proceeds and that no commission would be paid to unregistered broker/dealers, officers, directors, or employees. Further, NAMP included unsupportable projections in the offering materials sent to prospective investors. Specifically, sales materials distributed to potential investors contained a document projecting future sales of $540,000,000 over the next five years, with net income of $201,944,400, without disclosing that the Company's highest annual gross revenue at that point was approximately $178,000. Complaint ¶ 20.

15. Mason sold NAMP stock out of his home and then a classic penny stock boiler-room in Newport Beach, California. He ran the office with two associates: his girlfriend Emery and associate Anderson. Mason hired other persons, who were not registered as brokers with the Commission, as "fronters" to cold-call potential investors from "lead" cards provided by Mason. Emery also acted as a fronter. The fronters made as many as 200 such cold calls a day to potential

investors, following scripts provided by Mason and Anderson. After developing a prospect, they would transfer the call to Mason or Anderson, who, as "closers," would attempt to consummate the sale. The fronters were promised (and sometimes paid) 10% of the amount of money invested by people they had pitched. Complaint ¶ 21.

16. The fronters, working under Mason's and Anderson's direction and control, aggressively touted NAMP stock, falsely claiming that the Company was an acquisition target and had obtained lucrative new contracts. For example, one investor was told the Company had received orders for its safety needles from four new customers, including Planned Parenthood and Columbia HCA, in amounts totaling $26-36 million. No such contracts existed. Moreover, scripts and offering materials drafted by Mason state that NAMP had a $15 million contract with Kaiser Permanente. Again, no such contract existed. Complaint ¶ 22.

17. In addition to the foregoing misrepresentations and omissions, Mason presented himself as an officer of NAMP, who could be reached at the Company's headquarters. He stated that he was not a fundraiser, and would not receive any portion of the funds raised. Other false statements made by Mason included:

- NAMP's profit margin was 30%;
- at the current rate, the Company "should write $50-100 million in sales" in 2001;
- an "angel investor" had put $15 million into the Company; and
- NAMP had applied with NASDAQ for pre-approval of its listing on the NASDAQ stock exchange.

Complaint ¶ 23.

18. In mid-September 2001, Emery and Anderson solicited an individual to purchase NAMP stock. Anderson misrepresented that New York officials had placed a $1 million order for NAMP medical products "right after" September 11, 2001, and that the terrorist attacks would benefit NAMP's business.

Anderson further said that the attacks benefited NAMP's business. As with the other touted contracts, this order did not exist. Complaint ¶ 24.

19. In addition to making the false statements himself, Anderson instructed other telemarketers to use the false September 11th claim in their sales pitches to potential investors. Complaint ¶ 25.

20. The NAMP stock sold by Anderson in the second offering was sold at $2.50 per share, did not trade on an exchange, was not quoted on NASDAQ, and was issued by a company with net tangible assets of less than $2 million. Guido Declaration at ¶ 7.

21. Mason collected $379,659.91 in commissions from the second offering of NAMP stock in which Anderson was a co-promoter. Guido Declaration at ¶ 5.

22. On August 5, 2003, the Court entered a final judgment of default against Defendants Mason and Emery. The Court held, in pertinent part, Mason and Emery jointly and severally liable for $379,659.91 in disgorgement and $34,814.00 in prejudgment interest representing profits gained as a result of the second offering of NAMP stock. Guido Declaration at ¶ 6.

23. The stock offered and sold by NAMP, Gianakos, Efstathiou, Mason, Anderson, and Emery was not registered or exempt from the registration requirements of the Securities Act. NAMP, Gianakos, Efstathiou, Mason, Anderson, and Emery violated, and unless restrained and enjoined will continue to violate Sections 5(a) and (c) of the Securities Act, [15 U.S.C. §§ 77e(a) and (c)]. Complaint ¶ 29.

24. NAMP, Gianakos, Efstathiou, Mason, Anderson, and Emery violated, and unless restrained and enjoined will continue to violate the anti-fraud provisions of the securities laws: Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder. Complaint ¶ 32.

25. Efstathiou, Mason, Anderson and Emery were not registered as brokers or exempt from the registration requirements of the Exchange Act. Efstathiou, Mason, Anderson and Emery violated, and unless restrained and enjoined will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]. Complaint ¶ 35.

26. Gianakos aided and abetted Efstathiou, Mason, Anderson, and Emery's violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)], and unless restrained and enjoined will continue to aid and abet violations of that provision. Complaint ¶ 36.

## CONCLUSIONS OF LAW

**BY REASON OF THE FOREGOING**, this Court has subject matter jurisdiction of this action and personal jurisdiction of Defendant Anderson;

**BY REASON OF THE FOREGOING**, Defendant Anderson, in the offer or sale of a security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly and indirectly: a) employed a device, scheme, or artifice to defraud; (b) obtained money or property by means of any untrue statement of a material fact and omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon the purchaser, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**BY REASON OF THE FOREGOING**, Defendant Anderson, directly or indirectly, by the use of any means or instrumentality of interstate commerce, and of the mails: a) employed a device, scheme, or artifice to defraud; (b) made an untrue statement of a material fact and omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in an act, practice, or

course of business which operated as a fraud or deceit upon other persons, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

**BY REASON OF THE FOREGOING**, Defendant Anderson, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer and sell securities through the use or medium of a prospectus or otherwise when no registration statement has been filed or was in effect as to such securities and when no exemption from registration was available in violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

**BY REASON OF THE FOREGOING**, Defendant Anderson, directly or indirectly made use of the mails or means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities when he neither was registered with the Commission as a broker-dealer nor when associated with a Commission registered broker-dealer in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

**BY REASON OF THE FOREGOING**, Defendant Anderson participated in the offering of a penny stock. Sections 3(a)(51) and 21(d)(6)(B) of the Exchange Act and Rule 3a51-1 thereunder. [15 U.S.C. §§ 78c(a)(51), 78u(d)(6)(B), 17 C.F.R. 240.3a51-1.]

**THEREFORE,**

**I.**

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT** the Commission's Motion for Entry of Default Judgment with respect to Defendant Anderson is hereby granted.

**II.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** Defendant Anderson, his agents, servants, employees, attorneys, assigns, and all

persons in active concert or participation with him who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

### III.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** Defendant Anderson, his agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with him who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which

operates or would operate as a fraud or deceit upon any person.

## IV.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT** Defendant Anderson, his agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption:

(a) Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b) Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding of examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

## V.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT** Defendant Anderson, his agents, servants, employees, attorneys, assigns, and all persons in active concert or participation with them who receive actual notice of

this Final Judgment by personal service or otherwise are permanently restrained and enjoined from making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security, without being registered as a broker and/or dealer pursuant to Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)], in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## VI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT** Defendant Anderson is permanently barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars except as provided in Rule 3a51-1 under the Exchange Act [17 C.F.R. 240.3a51-1].

## VII.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** Defendant Anderson is jointly and severally liable with Defendants Mason and Emery for $379,659.91 in disgorgement and $34,814.00 in prejudgment interest representing profits gained as a result of the conduct alleged in the Complaint. Defendant Anderson is also individually liable for a civil penalty in the amount of $120,000.00 pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VIII.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** Defendant Anderson shall satisfy this obligation by paying $534,473.91 within ten business days to the Clerk of this Court, together with a cover letter identifying Laurence Mark Anderson (a/k/a Ron Laurence) as a defendant in this action; setting forth the title and civil action number of this action and the name of

this Court; and specifying that payment is made pursuant to this Final Judgment.

## IX.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** Defendant Anderson shall simultaneously transmit a photocopy of such payment and letter to the SEC's counsel in this action.

## X.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** by making this payment, Defendant Anderson relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendant Anderson.

## XI.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** the Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS"). These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held by the CRIS until further order of the Court. In accordance with the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7246]. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes.


this Court; and specifying that payment is made pursuant to this Final Judgment.

## IX.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** Defendant Anderson shall simultaneously transmit a photocopy of such payment and letter to the SEC's counsel in this action.

## X.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** by making this payment, Defendant Anderson relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Defendant Anderson.

## XI.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT** the Clerk shall deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS"). These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held by the CRIS until further order of the Court. In accordance with the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7246]. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes.

## XII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT** the Court retains jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## XIII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT** there being no just cause for delay, the Clerk of the Court is directed, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter this Final Judgment against Defendant Anderson forthwith and without further notice.

**SO ORDERED.**

Dated: _October 6_, 2003

_____
United States District Judge

## Certificate of Service

<u>SEC v. North American Medical Products, Inc. et al. SACV-03-250 AHS (ANx)</u>

I hereby certify that I caused true and correct copies of the following documents to be served on Defendants Anderson, Emery and Mason by U.S. Mail at the addresses shown on the attached service list:

MOTION OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION FOR ENTRY OF DEFAULT JUDGMENT UNDER FED. R. CIV. P. 55(b)(2)

NOTICE - WARNING OF MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION FOR ENTRY OF JUDGMENT BY DEFAULT AGAINST DEFENDANT LAURENCE MARK ANDERSON (a/k/a RON LAURENCE)

DECLARATION OF KENNETH J. GUIDO IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR ENTRY OF DEFAULT JUDGMENT UNDER FED. R. CIV. P. 55(b)(2)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR ENTRY OF DEFAULT JUDGMENT UNDER FED. R. CIV. P. 55(b)(2)

[PROPOSED] FINDINGS, ORDER AND FINAL JUDGMENT OF DEFAULT AGAINST DEFENDANT LAURENCE MARK ANDERSON (a/k/a RON LAURENCE)

Dated: August 27, 2003

*Janene M. Smith*
Janene M. Smith
Staff Attorney
Division of Enforcement
Securities and Exchange Commission
450 Fifth Street, NW
Washington, DC 20549-0803
(202) 824-5086

## Service List

### SEC v. North American Medical Products, Inc. et al. SACV-03-250 AHS (ANx)

Laurence Mark Anderson (a/k/a Ron Laurence)
4929 Southridge Avenue
Los Angeles, CA 90043

Kristin Luck Emery
501 S. Jefferson Avenue
Fullerton, CA 92832

North Kern State Prison
CDC # T98111  Louis Ronnie Sarpy (a/k/a Paul Wayne Mason)
CE-84L  P.O. Box 5004
Delano, CA 93216